IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN SIMMONS,<br><br>        Plaintiff,<br><br>    vs.<br><br>RITE OF PASSAGE ATHLETIC TRAINING CENTERS AND SCHOOLS, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. CV F 10-1331 LJO GSA<br><br>**SUMMARY JUDGMENT DECISION**<br>(Doc. 47.) |

**INTRODUCTION**

Defendant Rite of Passage Athletic Training Centers and Schools ("ROP") seeks summary judgment that plaintiff Kevin Simmons ("Mr. Simmons") failed to exhaust administratively his federal and California statutory disability discrimination claims to bar them. Mr. Simmons responds that he fulfilled his exhaustion obligations by providing the California Department of Fair Employment and Housing ("DFEH") with information to support his disability discrimination claims. This Court considered ROP's summary judgment motion on the record[1] without a hearing, pursuant to this Court's March 20, 2012 order. For the reasons discussed below, this Court GRANTS ROP summary judgment

---

[1] This Court carefully reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does not rule on evidentiary matters in a summary judgment context, unless otherwise noted.

on Mr. Simmons' federal and California statutory disability discrimination claims.

## BACKGROUND

### Summary

ROP operates Sierra Ridge Academy ("academy") in Calaveras County as a group home for juvenile male wards of California courts. In 2001, ROP hired Mr. Simmons as an athletics coach, and Mr. Simmons received promotions, culminating in shift supervisor. In early 2009, ROP terminated Mr. Simmons who claims that ROP "wanted to get rid of him because of the cost and effort of accommodating his disability."

In this action, Mr. Simmons proceeds on his original complaint ("complaint") to pursue employment discrimination claims against ROP and several of its administrators/managers. ROP seeks summary judgment on the complaint's second and fourth disability discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, §§ 12900, et seq., in that Mr. Simmons' requisite administrative charges failed to allege disability discrimination.

### Mr. Simmons' Claims

The complaint notes that this action "is brought to redress discrimination in employment motivated by disability, race, color, and age." The complaint alleges that Mr. Simmons has suffered a disability, arthritis, since 2004 and that a physician diagnosed it in early 2008. The complaint further alleges that by March 2008, Mr. Simmons had developed disabling arthritis to cause "difficulty walking" and to require his use of a golf cart to get around the academy's grounds. According to the complaint, Mr. Simmons' disability "substantially limits major life activities, including walking, running, bending, reaching, and twisting."

The complaint's (second) ADA claim against ROP alleges that "Defendants discriminated against plaintiff by terminating him because of the ramifications they feared . . . were imminent if he continued as a Shift Supervisor" and "were aware plaintiff had a disability." The complaint's (fourth) FEHA claim against ROP alleges that "Defendants . . . discriminated against and created a hostile work environment for plaintiff on the grounds of his . . . disability or the perception of a disability." The FEHA claim further alleges that "Defendants agreed to falsify or coerce others in supervisory positions

to falsify records of wrongdoing on plaintiff's part so as to develop pretexts for terminating plaintiff."

**Mr. Simmons' Administrative Charges**

Mr. Simmons notes that on March 31, 2009, he telephoned DFEH to complain of his termination and that DFEH's April 1, 209 letter enclosed an unsigned DFEH charge for Mr. Simmons to sign and date and admonished: "DO NOT MAKE CHANGES ON THE COMPLAINTS. If you do not agree with the language in the complaints, contact ERNIE HERRERA at 916-445-6374 with your concerns." (Uppercase in original.)

Mr. Simmons further notes that he faxed an undated handwritten letter to Ernie Herrera which states in pertinent part:

> . . . they put these trumped up charges of child abuse on me to get rid of me due to my arthritic condition in both hips. Over the past year I have developed Rhumatoid [sic] Arthritis in both hips. It has severely limited my ability to walk or move quickly even with medication. . . . Due to my diminished capacities management allowed me to use a cart that the maintenance staff uses after the maintenance staff left at 5:00 pm. When management requested the company to buy me a separate cart for myself they agreed to. Except they told Sierra Ridge it had t come out of their budget. Sierra Ridge couldn't afford it. When I asked them about it Program Director David Harper said to me, "We can't afford it on our budget just like all the other disabled things we need to comply with but we can't afford it." After my termination a staff member from another site called me at home to inform me that the reason I was released was due to my condition and not any restraints. They are concerned about the costs of having to make the site disabled friendly.

Mr. Simmons executed an April 9, 2009 discrimination charge ("DFEH charge") prepared by DFEH to claim: "I was terminated because of my age (47) and race (African/American)." The DFEH charge further alleges: "I was the only African/American Shift Supervisor who is over the age of 40 and terminated. I was replaced by a non-African/American younger employee." The DFEH charge included checked boxes for race and age discrimination and to file the charge with the Equal Employment Opportunity Commission ("EEOC"). The DFEH charge's box for disability discrimination was unchecked, and the DFEH charge makes no reference to alleged disability or discrimination based on disability. DFEH issued Mr. Simmons a right-to-sue letter.

Mr. Simmons' April 13, 2009 EEOC discrimination charge ("EEOC charge") included checked boxes for race and age discrimination but the box for disability was unchecked.

Mr. Simmons' December 21, 2009 email to Ernie Herrera identified two witnesses who can testify that Mr. Simmons was set up "to be terminated due to my arthritis" and that "Program Director

3

1  Harper stated after hearing about my condition (arthritis) "If he can't get around anymore we are going
2  to have to get rid of him."

3  Mr. Simmons submitted to DFEH a second DFEH charge, dated August 13, 2010, which
4  included checked boxes for race, disability and age discrimination and stated: 'I believe I was terminated
5  because of my . . . disability (Rheumatoid Arthritis) in both hips.'"

6  In his declaration, ROP human resources director Rick Wright ("Mr. Wright") states: "At no time
7  did Mr. Simmons indicate or allege he was discriminated against based on an alleged disability." Mr.
8  Wright further declares: "At no time did ROP receive notice of or respond in any fashion to any
9  complaint of discrimination allegedly filed by Mr. Simmons based on an alleged disability. In fact, Mr.
10 Simmons never filed a timely complaint of disability discrimination in any governmental forum, state
11 or federal."

## DISCUSSION

### Summary Judgment Standards

14 ROP argues that Mr. Simmons' failure to file timely administrative charges to allege disability
15 discrimination bars his ADA and FEHA disability discrimination claims.

16 F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense
17 – or the part of each claim or defense – on which summary judgment is sought." "A district court may
18 dispose of a particular claim or defense by summary judgment when one of the parties is entitled to
19 judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st
20 Cir. 1999).

21 Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any
22 material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita*
23 *Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv.,*
24 *Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary
25 judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need
26 for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers*
27 *v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

28 On summary judgment, a court must decide whether there is a "genuine issue as to any material

fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case"); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).  A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Under F.R.Civ.P. 56(g), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

As discussed below, Mr. Simmons fails to raise sufficient factual or legal challenges to avoid

summary judgment on his disability discrimination claims.

**Administrative Exhaustion**

"Exhaustion requires that a plaintiff comply with regulatory and judicially-imposed exhaustion requirements, including the requirement to pursue the administrative claim 'with diligence and in good faith.'" *Jasch v. Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002). Filing a timely administrative charge is akin to complying with a statute of limitations. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127 (1982).

To maintain an ADA action, a plaintiff must file a timely discrimination charge with the EEOC. *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000). A discrimination charge must be filed with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). However, if a discrimination charge is filed first with a state agency, an EEOC charge must be filed within 300 days "after the alleged unlawful employment practice occurred" or 30 days "after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier." 42 U.S.C. § 2000e-5(e)(1).

"[T]o bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law." *Yurick v. Superior Court*, 209 Cal.App.3d 1116, 1120, 257 Cal.Rptr. 665 (1989). FEHA requires a plaintiff employee to exhaust the administrative remedy provided by the statute by filing a charge with DFEH and to obtain from DFEH a notice of right to sue to file a civil action based on FEHA violations. Cal. Gov. Code, §§ 12960, 12965(b); *Romano v. Rockwell Internat., Inc.*, 14 Cal.4th 479, 492, 59 Cal.Rptr.2d 20 (1996). "[W]here an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Abelleira v. District Court of Appeal,* 17 Cal.2d 280, 292, 109 P.2d 942 (1941).

Exhaustion of administrative remedies is "a jurisdictional prerequisite to resort to the courts." *Abelleira,* 17 Cal.2d at 293,109 P.2d 942. "The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA." *Romano*, 14 Cal.4th at 492, 59 Cal.Rptr.2d 20. Plaintiff employees bear the "burden to plead and establish as a part of their case in chief that they exhausted their administrative remedy." *Westinghouse Elec. Corp. v. County of Los Angeles*, 42 Cal.App.3d 32, 37, 116 Cal.Rptr. 742 (1974).

1    With these exhaustion principles in mind, this Court turns to ROP's challenges to Mr. Simmons'
2 DFEH and EEOC charges.

### Scope Of Judicial Claims – "Like Or Reasonably Related"

4    ROP argues that Mr. Simmons is unable to pursue disability discrimination claims in that his
5 DFEH and EEOC charges included checked boxes for only race and age discrimination and did not
6 address disability.

7    California courts endorse a "like or reasonably related" standard to address the scope of judicial
8 claims beyond those addressed in administrative charges. A judicial complaint is within the scope of
9 an administrative charge when the judicial complaint's scope "is limited to the 'scope' of the EEOC
10 investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez*
11 *v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *accord Oubichon v. North American*
12 *Rockwell Corporation,* 482 F.2d 569, 571 (9th Cir. 1983).

13    Nonetheless, the California Court of Appeal cautions:

> . . ."when the difference between the charge and the complaint is a matter of adding an entirely new basis for the alleged discrimination, neither the *Sanchez* nor *Oubichon* rule sanctions the expansion of the complaint. For instance, a complaint alleging race discrimination is neither 'like or related to' nor likely to be discovered in a 'reasonable' investigation of a charge of sex discrimination."

17 *Okoli v. Lockheed Technical Operations Co.*, 36 Cal.App.4th 1607, 1615 (quoting 1 Larson,
18 Employment Discrimination (2d ed. 1994) transfer binder, § T49.11(c)(1), p. T-350.)); *see Rodriguez*
19 *v. Airborne Express*, 265 F.3d 890, 899 (9th Cir. 2001) (plaintiff's "timely administrative complaint fails
20 to offer an adequate factual basis to support a charge of disability discrimination").

21    ROP notes that the DFEH and EEOC charges lack "reference to disability discrimination" in
22 connection with Mr. Simmons' employment. ROP points to human resources director Mr. Wright's
23 declaration that ROP lacked notice of a disability claim. ROP concludes that Mr. Simmons' failure to
24 exhaust before DFEH and EEOC bar his ADA and FEHA disability discrimination claims.

25    Mr. Simmons responds that he satisfied his exhaustion obligations in that he provided DFEH
26 information to support disability discrimination. Mr. Simmons imposes "responsibility of DFEH to
27 accept and add any modification to a drafted complaint." Mr. Simmons points to DFEH regulations
28 which provide:

> Any complainant . . . which wishes to propose modifications to the unsigned complaint shall do so in writing submitted to the department via U.S. mail, private mail carrier, facsimile transmission, e-mail, or other electronic means. The department shall consider the proposed modifications and, if accepted, draft a new complaint which may be signed by a complainant in person or sent to the complainant for signature. . . . When modifications are not accepted, the department shall notify the complainant . . . of the reasons for rejection and send to the complainant via U.S. mail, facsimile transmission, e-mail, or other electronic means another copy of the original complaint for signature.

2 CA ADC § 10009.

Mr. Simmons accuses DFEH of failure "to act as it was required to under the regulation" as DFEH "did not consider Plaintiff's written, proposed modification containing the disability discrimination allegations."

Mr. Simmons characterizes his undated letter as a proposed modification to add disability discrimination claims to his DFEH charge. However, Mr. Simmons offers no evidence that he treated or considered his letter as a request for modification or to add a disability discrimination claim. Mr. Simmons does not offer his declaration that he requested a modification or informed DFEH to pursue disability discrimination claims. The inferences from the record are that he accepted the absence of a disability discrimination claim in that he signed his April 9, 2009 DFEH charge with no reference to disability discrimination.

In addition, there is no evidence that Mr. Simmons' disability claims are like or reasonably related to his age and race discrimination claims. Mr. Simmons offers nothing to support that his disability discrimination claims fall within the context of alleged age and race discrimination. Moreover, Mr. Simmons offers no meaningful support that his (second) August 13, 2010 DFEH charge timely preserved his disability discrimination claims, especially considering that it was submitted to DFEH beyond a year after his January 20, 2009 termination[2] and after this action was filed.

///

///

///

---

[2] DFEH regulations provide: "No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice occurred . . ." 2 CA ADC § 10002(b).

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court GRANTS ROP summary judgment on Mr. Simmons' (second) ADA claim and (fourth) FEHA claim to the extent based on disability discrimination.

IT IS SO ORDERED.

**Dated:   April 4, 2012**              **/s/ Lawrence J. O'Neill**
                                     UNITED STATES DISTRICT JUDGE